# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF MISSISSIPPI
# GREENVILLE DIVISION

**DAVID WEATHERSPOON**                                                                        **PLAINTIFF**

**v.**                              **No. 4:12CV119-MPM-DAS**

**E. L. SPARKMAN, ET AL.**                                                   **DEFENDANTS**

## MEMORANDUM OPINION

This matter comes before the court on the *pro se* prisoner complaint of David Weatherspoon, who challenges the conditions of his confinement under 42 U.S.C. § 1983. For the purposes of the Prison Litigation Reform Act, the court notes that the plaintiff was incarcerated when he filed this suit. The defendants have moved [39] for summary judgment. Weatherspoon has responded to the motion, and the matter is ripe for resolution. For the reasons set forth below, the defendants' motion [39] for summary judgment will be granted, and judgment will be entered for the defendants.

## Summary Judgment Standard

Summary judgment is appropriate if the "materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a) and (c)(1). "The moving party must show that if the evidentiary material of record were reduced to admissible evidence in court, it would be insufficient to permit the nonmoving party to carry its burden." *Beck v. Texas State Bd. of Dental Examiners*, 204 F.3d 629, 633 (5th Cir. 2000) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986), *cert. denied*, 484 U.S. 1066 (1988)). After a proper motion for summary judgment is made, the burden shifts to the non-movant to set forth specific facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby,* Inc.,

477 U.S. 242, 249, 106 S. Ct. 2505, 2511, 91 L. Ed. 2d 202 (1986); *Beck*, 204 F.3d at 633; *Allen v. Rapides Parish School Bd.*, 204 F.3d 619, 621 (5th Cir. 2000); *Ragas v. Tennessee Gas Pipeline Company*, 136 F.3d 455, 458 (5th Cir. 1998). Substantive law determines what is material. *Anderson*, 477 U.S. at 249. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.*, at 248. If the non-movant sets forth specific facts in support of allegations essential to his claim, a genuine issue is presented. *Celotex*, 477 U.S. at 327. "Where the record, taken as a whole, could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 89 L. Ed. 2d 538 (1986); *Federal Savings and Loan, Inc. v. Krajl*, 968 F.2d 500, 503 (5th Cir. 1992). The facts are reviewed drawing all reasonable inferences in favor of the non-moving party. *Allen*, 204 F.3d at 621; *PYCA Industries, Inc. v. Harrison County Waste Water Management Dist.*, 177 F.3d 351, 161 (5th Cir. 1999); *Banc One Capital Partners Corp. v. Kneipper*, 67 F.3d 1187, 1198 (5th Cir. 1995). However, this is so only when there is "an actual controversy, that is, when both parties have submitted evidence of contradictory facts." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994); *see Edwards v. Your Credit, Inc.*, 148 F.3d 427, 432 (5th Cir. 1998). In the absence of proof, the court does not "assume that the nonmoving party could or would prove the necessary facts." *Little*, 37 F.3d at 1075 (emphasis omitted).

**Undisputed Material Facts**

At the times relevant to this case, Weatherspoon was in the custody of the Mississippi Department of Corrections ("MDOC") and housed in Unit 26 of the Mississippi State Penitentiary ("MSP"). The defendants were employed by MDOC at the time. Weatherspoon alleges that Muslim

inmates in Unit 26 could not regularly attend Jumu'ah services (the central religious observance of Islam, analogous to the Sunday worship of Christianity and Saturday worship of the Jewish faith. The defendants initially could not find a secure room large enough for such services. Then, when the defendants tried to use the large dining hall for Jumu-ah services, they discovered that meals for the inmates would often extend past the time for Jumu'ah, as set forth in the Qur'an, leaving Weatherspoon and his fellow Muslims without the opportunity to worship on that day. When Weatherspoon submitted a grievance seeking regular Jumu'ah services, the defendants offered to move him from Unit 26 to either Unit 29 or Unit 30 at the Mississippi State Penitentiary, where such services are available regularly and on time. Weatherspoon refused the offer to move and demanded that Jumu'ah and other services be made available in his current housing – Unit 26.

### Right to Free Exercise of Religion in the Prison Context Under the United States Constitution – and the Religious Land Use and Institutionalized Persons Act

Under the United States Constitution, a prison policy or practice is proper if it is reasonably related to a legitimate penological objective of the facility. *Hay v. Waldron*, 834 F.2d 481, 487-87 (5th Cir. 1987). This general statement of the law has been upheld even when the regulation completely stifled a group of Muslim inmates' opportunity to attend Jumu'ah, the central religious ceremony of the Muslim faith, analogous to Christian Sunday services or Saturday services of the Jewish faith. *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 360 (1987). This rule has also been applied to require Rastafarians to cut their hair, even though keeping one's hair unshorn and unwashed is a tenet of the Rastafari religion. *Scott v. Mississippi Dept. of Corrections*, 961 F.2d 77 (5th Cir. 1992). Weatherspoon has not identified a policy or practice of the defendants to deny his right to the free exercise of his religion. At first, lack of an appropriate space led to a limitation on the frequency of Jumu'ah services; then difficulty in getting inmates fed in time for a proper Jumu'ah service led to other missed services. The defendants were met with real-world difficulties in ensuring Jumu'ah

services were available in Unit 26.  Then, when their initial attempts to accommodate Weatherspoon's right to attend religious services proved unsuccessful in Unit 26, the defendants offered to move him to a unit where such services were regularly conducted without incident.  Weatherspoon refused.  As he refused to avail himself of an accommodation that would afford him full opportunity to observe his faith and its practices, his claim under the Constitution alleging violation of his right to the free exercise of his religion will be dismissed.

The Constitution is not the only source for protecting the rights of inmates to worship.  Courts must also examine such claims under the Religious Land Use and Institutionalized Persons Act, which provides for free exercise rights more expansive than those protected by the Constitution.  Even under this rigorous standard, however, Weatherspoon's claims must be dismissed.  Section 3 of the Religious Land Use and Institutionalized Persons Act of 2000 (RLUIPA or Act), 114 Stat. 804, 42 U.S.C. § 2000cc-1(a)(1)-(2), provides in part:  "No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution," unless the burden furthers "a compelling governmental interest," and does so by "the least restrictive means." *Cutter v. Wilkinson*, 544 U.S. 709, 712, 125 S.Ct. 2113, 2116 (2005).  Section 3 of RLUIPA

> covers state-run institutions – mental hospitals, prisons, and the like – in which the government exerts a degree of control unparalleled in civilian society and severely disabling to private religious exercise. 42 U.S.C. § 2000cc-1(a); § 1997; see Joint Statement 16699 ('Institutional residents' right to practice their faith is at the mercy of those running the institution.') RLUIPA thus protects institutionalized persons who are unable freely to attend to their religious needs and are therefore dependent on the government's permission and accommodation for exercise of their religion.

*Cutter,* 544 U.S. at 720-721, 125 S.Ct. at 2121-2122 (2005) (citations omitted).

The Supreme Court was quick to note, however, that the safe, secure, and orderly operation of a prison is, indeed, a compelling government interest, thus meeting the RLUIPA test for restriction of a religious practice.

> We have no cause to believe that RLUIPA would not be applied in an appropriately
> balanced way, with particular sensitivity to security concerns. While the Act adopts a
> "compelling governmental interest" standard, see *supra,* at 2118, "[c]ontext matters"
> in the application of that standard. *See Grutter v. Bollinger,* 539 U.S. 306, 327, 123
> S.Ct. 2325, 156 L.Ed.2d 304 (2003). Lawmakers supporting RLUIPA were mindful
> of the urgency of discipline, order, safety, and security in penal institutions. See, *e.g.,*
> 139 Cong. Rec. 26190 (1993) (remarks of Sen. Hatch). They anticipated that courts
> would apply the Act's standard with "due deference to the experience and expertise of
> prison and jail administrators in establishing necessary regulations and procedures to
> maintain good order, security and discipline, consistent with consideration of costs and
> limited resources." Joint Statement 16699 (quoting S.Rep. No. 103-111, at 10,
> U.S.Code Cong. & Admin.News 1993, pp. 1892, 1899, 1900).

*Cutter,* 544 U.S. at 722-723, 125 S.Ct. at 2123 (2005).

The problem Weatherspoon faces in establishing his free exercise claim is that the defendants have completely accommodated his requests for access to religious services – but he has steadfastly refused to take advantage of the accommodation. As set forth above, Weatherspoon has complained that Islamic religious services are not available as often as they should be in his current housing location, Unit 26 of the Mississippi State Penitentiary. He acknowledges that there are few areas in Unit 26 large enough to accommodate such services and that the defendants thus made available the dining area for that purpose. All parties acknowledge that sometimes the dining process takes longer than planned, which pushes Islamic religious services beyond the time permitted under the strictures of Islam. To completely accommodate Weatherspoon's request for more frequent and timely observation of Muslim practices, the defendants offered to move Weatherspoon to either Unit 29 or Unit 30 of the Mississippi State Penitentiary – where all the services he has requested are available at the requisite times. Weatherspoon, however, rejected the offer to move, insisting that such services be offered in his current unit. At this point, it is not the defendants who are depriving Weatherspoon of his opportunity to worship in the way of his choosing; it is Weatherspoon, himself. For this reason, Weatherspoon's claims under both the Constitution and RLUIPA are without merit. The defendants'

motion [39] for summary judgment will be granted, and judgment will be entered for the defendants.

A final judgment consistent with this memorandum opinion will be entered toay.

**SO ORDERED**, this, the 20th day of October, 2014.

                                          **/s/ MICHAEL P. MILLS**
                                          **UNITED STATES DISTRICT JUDGE**
                                          **NORTHERN DISTRICT OF MISSISSIPPI**